UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

        Plaintiff,

     v.                                Case No. 04-CR-41

GENARO C. RODRIGUEZ, JR.,

        Defendant.

_____

O R D E R

This matter comes before the court on Magistrate Judge William E. Callahan, Jr.'s recommendation that this court deny Genaro Rodriguez's ("Rodriguez") various pretrial motions. The defendant has filed objections to the magistrate's various rulings including denial of his motion to dismiss the superseding indictment, motion for a bill of particulars, motion for a *Daubert* hearing, and motion to compel retesting. The government has filed a consolidated response to Rodriguez's objections. These objections are now fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636 (b)(1)(C), only the portions of the recommendation Rodriguez filed objections to will be reviewed *de novo* by this court. *See* 28 U.S.C. § 636(b)(1)(C)(2005).

## FACTUAL BACKGROUND

On June 10, 2004, a grand jury sitting in this district returned a three count indictment against Rodriguez charging him with drug related offenses in violation of 21 U.S.C. §§ 841 and 846 and 18 U.S.C. § 2. On July 21, 2004, a superseding indictment was filed against Rodriguez charging him with the same three counts and including an additional "sentencing allegation" which reads:

1.  With respect to counts one through three of the superseding indictment:

    a.  The offenses and all relevant conduct involved at least 50 kilograms of mixture and substance containing cocaine but no more than 150 kilograms of mixture and substance containing cocaine. *See* U.S.S.G. §§ 1B1.3, 2D1.1(c)(2).

(Superseding Indictment at 4.)

On August 3, 2004, Rodriguez was arraigned before Magistrate Judge Aaron Goodstein. and entered a plea of not guilty to the charges in the superseding indictment. Rodriguez filed several pretrial motions: (1) a motion to compel the retesting of the substances in this case; (2) a motion to suppress evidence; (3) a motion to dismiss the superseding indictment; (4) a motion for a bill of particulars; (5) a motion to compel the government to provide the defendant with evidence and compliance with 18 U.S.C. § 2518; (6) a motion for a *Daubert* hearing; and (7) a motion to requires the United States Marshals to provide the defendant with accommodations. As stated above, Rodriguez objected to the

magistrate's rulings in denying his motion to dismiss the superseding indictment, motion for a bill of particulars, motion for a *Daubert* hearing, and motion to compel retesting; each of these motions will be addressed herein.[1]

ANALYSIS

1. Motion to Dismiss the Indictment

Rodriguez sets forth the following grounds in his motion seeking dismissal of the superseding indictment: (1) a failure to allege a detectable amount; (2) a failure to allege a usable amount, (3) improperly charging Rodriguez of being " involved" with cocaine; (4) linguistic problems with "mixture" and "substance"; and (6) the inclusion of duplicitous and multiplicitous charges.

The Seventh Circuit has articulated that indictments must meet three preliminary requirements. First, an indictment must state the elements of the crime with which the defendant is charged; second, it must adequately apprise the defendant of the nature of the charges so that he can prepare a defense; and third, the indictment must allow the defendant to plead the judgment to bar future prosecutions for the same offense. *United States v. Smith,* 230 F.3d 300, 305 (7th Cir. 2000); *see also* Fed. R. Crim. P. 7(c)(1)(2005). The standard for reviewing an

---

[1] In regards to Rodriguez's motion to compel the government to provide the defendant with evidence and compliance with 18 U.S.C. § 2518, he indicated the government would be sharing the information he has requested. The court has had no further indication that such request has not been accommodated; therefore, this matter will not be addressed in this order.

indictment is one of practicality and common sense, rather than "in a hyper-technical manner." *United States v. McNeese*, 901 F.2d 585, 602 (7th Cir. 1990).

At the outset, the court notes that Rodriguez's indictment meets each of these three baseline requirements. First, it states the elements of the crime with which Rodriguez has been charged. In Counts One, Two, and Three, Rodriguez is charged with violations of 21 U.S.C. §§ 846, 841 (a)(1) & 841(b)(1)(A). Rodriguez is also charged with violations of 18 U.S.C. § 2 at Counts One and Two. Rodriguez's indictment tracks the language of these statutes and Count One further alleges Rodriguez "knowingly and intentionally conspired with other persons" . . . "to distribute and to possess with the intent to distribute a controlled substance." (Superseding Indictment at 1.) Counts Two and Three of the indictment further read that Rodriguez "did knowingly and intentionally possess with the intent to distribute a controlled substance." (Superseding Indictment at 2-3.) Each of these counts of the indictment track the statutory language embodied in the corresponding statues. Thus, the indictment thoroughly complies with this requirement as defined by *Smith*. *See* 21 U.S.C. §§ 841 and 846 (2005); *see also Smith*, 230 F.3d at 305.

From a plain reading of the indictment, the court readily concludes that it satisfies the second requirement by adequately apprising the defendant of the

nature of the charges so that he can prepare for a defense. The indictment outlines the statutes governing his conduct and the relevant conduct, thereby placing the defendant on notice of the charges against him.

The third requirement is also satisfied as the indictment is sufficiently detailed and sufficiently specific so as to bar future prosecutions. It sets forth relevant dates as to when the conduct occurred, provides requisite amounts of controlled substances underlying the conduct, and finally notes the location where the cocaine substance was seized. Each of these details provides the specificity necessary to obviate any double jeopardy concerns.

Despite Rodriguez's indictment clearly conforming with these general notice requirements, he seeks dismissal on several grounds. Rodriguez's first ground for dismissal is that the indictment fails to allege a "detectable" amount of cocaine, although Rodriguez provides no definition as to what a "detectable" amount may be. However, the statute does not require this as an element of the offense, and the federal jury instructions do not place this as an element of the offense the government must prove at trial. With respect to §§ 841 and 846 violations, the government must prove the following elements: (1) that the defendant possessed the controlled substance alleged in the indictment; (2) that the defendant knew what the substance in question was; and (3) the defendant intended to deliver said substance. *See* West's Seventh Circuit Federal Jury Instructions at 379 (1999),

2B Fed. Jury Prac. & Instr. § 64.07 (5th ed.). There is no mention of a "detectable" amount in these provisions, and Rodriguez has provided no case law to support his position that a "detectable" amount needs to be alleged when a defendant is charged with §§ 841 and 846 violations.

Rodriguez's argument that the indictment should be dismissed because it fails to allege a "usable" amount meets a similar fate. Counsel relies on *United States v. Stewart*, 361 F.3d 373 (7th Cir. 2004) in his argument that the Seventh Circuit placed a "judicial gloss" on §§ 841 and 846 by requiring a "useable" amount of controlled substances, and to this end, the indictment must also include an allegation of a "usable" amount. However, a clear reading of *Stewart* discloses that it does not support Rodriguez's position. In *Stewart*, the Seventh Circuit vacated and remanded the imposition of a 10-year mandatory minimum sentence imposed by the lower court pursuant to a finding that the total methamphetamine solution found in the defendant's vehicle, 825 grams, triggered a 10-year minimum mandatory sentence under § 841(b). *Id.* at 374. The Seventh Circuit reversed and held that "only usable or consumable mixtures or substances are included in the drug quantity for sentencing purposes." *Id.* at 377. Because only 2.5 of the 825 grams were actually "useable" drugs, the Seventh Circuit held that the lower court inappropriately imposed the 10-year mandatory minimum. *Id.*

Far from creating a "judicial gloss" that mandates all indictments include an allegation of a "useable" amount, *Stewart* simply holds that at the sentencing stage of criminal prosecutions, a district court may only consider "useable" substances when making sentencing determinations under § 841 (b) and U.S.S.G. § 2D1.1. The *Stewart* court did not hold, as Rodriguez appears to argue, that alleging a "useable" amount is an element of the offense to be included in the indictment. To this end, Rodriguez's argument that the indictment must include a "useable" amount is without merit and does not warrant the dismissal of the indictment.

Rodriguez's next two grounds for seeking dismissal are premised upon two linguistic contentions. Specifically, he seeks dismissal because the indictment alleges he was "involved" with cocaine; and additionally because the indictment reads that the offense involved "a mixture and substance" rather than the statutory language of "a mixture or substance."

In each of the three counts of the indictment, at number two, the indictment reads:

> 2. The offense involved five (5) kilograms or more of a mixture and substance containing cocaine, a Schedule II controlled substance.

(Superseding Indictment at 1-3). Rodriguez disputes the word "involved," and in his motion, states that Controlled Substances Act "does not prohibit being involved with drugs." (Defendant's Motion to Dismiss Superseding Indictment

at 3).  However, the indictment is not charging Rodriguez with merely being "involved" with cocaine; rather it charges him with knowingly and intentionally possessing cocaine with the intent to deliver.   Additionally, Rodriguez objected to the indictment's language that the conspiracy "involved" cocaine.  Once again, the indictment does not charge Rodriguez with merely conspiring to be involved with cocaine.  At Count One, the indictment reads, Genaro C. Rodriguez, "the defendant herein, knowingly and intentionally conspired with other persons known and unknown to the grand jury to distribute and to possess with the intent to distribute a controlled substance."  (Superseding Indictment at 1).  Clearly, the charge is more than the mere "involvement" with cocaine as Rodriguez is attempting to argue, and the court finds no basis for dismissal on these grounds.

Similarly, Rodriguez's arguments concerning the use of the phrase "mixture and substance" are without merit.  In Rodriguez's motions, he cites to chemistry textbooks and incorporates illustrative charts in an attempt provide elaborate detail as to why, chemically, something may not be both a mixture and a substance.   Rodriguez argues that the current phrasing of the indictment is incoherent to the point that it fails to state an offense, and that it is void for vagueness in violation of the Fifth and Sixth Amendments.  Rodriguez attempts to bolster this argument by stating that the drafters of the statute deliberately

used the term "mixture or substance" as they knew that something could not be a mixture *and* a substance.

Section 841 uses the disjunctive "or" in the phrase "mixture or substance." 21 U.S.C. § 841(b)(1)(A)(2005). Perhaps the indictment could have been drafted to mirror the § 841 language of the disjunctive "or"; but the indictment as read does not render it fatal as Rodriguez argues. The Supreme Court in *Chapman v. United States*, 500 U.S. 453 (1991)stated that the terms mixture and substance were not defined in § 841 or the United States Sentencing Guidelines; and therefore, these terms are to be given their ordinary meaning. *Chapman v. United States*, 500 U.S. 453, 461-62 (1991). The Oxford English Dictionary defines a "mixture" as "the product of the mechanical mixing of two or more substances." 8 Oxford English Dictionary (2002). Upon this definition, the court concludes that mixtures and substances are not mutually exclusive, and something may at once include both a mixture and a substance. Rodriguez's scientific definitions are unnecessary when defining these terms for usage in an indictment.

Moreover, the *Chapman* court stated, "[t]he canon of construction that a court should strive to interpret a statute in a way that will avoid an unconstitutional construction is useful in close cases, but it is 'not a license for the judiciary to rewrite language enacted by the legislature.'" *Id.* at 464 (citing to *United States v. Monsanto*, 491 U.S. 600, 611(1989)). The court will not construe

the indictment in this case in a manner that would upset the statutory intent of the legislature. To this end, the court finds that the indictment complies with the ordinary meaning of mixture and substance, and that it is not incoherent or vague in any way.

Finally, Rodriguez suggests that Counts Two and Three of the indictment are duplicitous and warrant dismissal. An indictment is duplicitous if separate offenses are charged in a single count in the indictment. *United States v. Smith*, 26 F.3d 739, 753 (7th Cir. 1993). An indictment is multiplicitous if a single offense is charged in multiple counts of an indictment. *United States v. Allender*, 62 F.3d 909, 912 (7th Cir. 1995).

At Count Two, the indictment states that the offense Rodriguez is charged with involved 10 kilograms of cocaine seized at 3542 North 23rd Street in Milwaukee, Wisconsin. At Count Three, the indictment states the offense Rodriguez is charged with involved 42 grams of cocaine seized at 3220 North 12th Street in Milwaukee, Wisconsin. Clearly, these are two separate offenses charged in two separate counts of the indictment, and they are neither multiplicitous nor duplicitous as opined by the Seventh Circuit.

2.  Motion for a Bill of Particulars

Rodriguez moved for a bill of particulars and argues that Counts Two and Three of the indictment are problematic because they charge Rodriguez with

possession of cocaine in the Eastern District of Wisconsin on or about September 29, 2003. Rodriguez states he was never in the Eastern District of Wisconsin on or about September 29, 2003. Rodriguez contends that in the absence of knowing what theory the government will rely on in proving possession at trial, he will be inadequately apprised of the conduct to which he must defend against.

Rule 7(f) of the Federal Rules of Criminal Procedure states the "the court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f)(2005). In considering a motion for a bill of particulars, a court must essentially use a two-prong test in which it analyzes (1) "whether the indictment sets forth the elements of the offense charged," and (2) if this information "sufficiently apprises the defendant of the charges to enable him to prepare for trial." *United States v. Kendall,* 665 F.2d 126, 134 (7th Cir. 1981)(citing *United States v. Roya,* 574 F.2d 386, 391 (7th Cir. 1978)).

Turning to the first consideration, the court notes that the indictment certainly sets forth the elements of the offense charged. Rodriguez's indictment tracks the language of the statute and provides specific facts and allegations as to Rodriguez's conduct. Therefore, the court concludes that the indictment is in no way deficient as to the first consideration of *Kendall. See id.*

Secondly, the court finds that the information in the indictment will sufficiently apprise Rodriguez of the charges such that he will be able to prepare for trial. The purpose of a bill of particulars is to remedy instances where a defendant is not adequately apprised of the nature of the offense or facts necessary to avoid unfair surprise or double jeopardy. *United States v. Messino*, 855 F. Supp. 955, 962 (N.D. Ill. 1994). Requests beyond these clarifications fall into the realm of demands for evidentiary detail. *Id.* Defendants are entitled to know the facts relating to the offenses they are charged with, but the government is not required "to reveal the details of how it plans to prove its case." *United States v. Glecier,* 923 F.2d 496, 502 (7th Cir. 1991).

In his objection to the recommendation, Rodriguez reiterates that he is not seeking evidence in his request for a bill of particulars, but that he is requesting the government to disclose the theory upon which it will rely at trial. When Rodriguez requests to know the theories upon which the government will prove his case, he is requesting information far beyond what a bill of particulars would entail as provided by *Glecier*. *See id.* Therefore, the court is constrained to deny Rodriguez's motion for a bill of particulars.

### 3. Motion for a Daubert Hearing

Rodriguez moved for a *Daubert* hearing to determine the admissibility of the plaintiff's opinion evidence in identifying the substances in this case. Rodriguez

contends that the analyst's methods and opinion fall below the standards of *Daubert* admissibility and requests a hearing to determine the reliability and methodology of the drug testing analysis. Magistrate Callahan ordered that the motion for a *Daubert* hearing be denied, and Rodriguez objected stating that the denial was contrary to Seventh Circuit law.

To begin the court's analysis, the substances in connection with this case were tested on December 19, 2003, by the Milwaukee Branch of the State Crime Laboratory (MBSCL), where Ms. Birjees Kauser ("Kauser") served as the laboratory analyst conducting the tests. Three procedures were used by Kauser to test the substances: (1) a color test; (2) an infrared spectroscopy ("IR"); and (3) a combination of gas chromatography and mas spectrometry ("GC/MS"). From these three tests, Kauser determined that the substances in question contained cocaine.

Ms. Jana Champion ("Champion"), also of the MBSCL, signed the lab report in connection with these substances and submitted an affidavit detailing the procedures used by the MBSCL in testing the substances. Because the GC/MS test was Rodriguez's most significant point of contention, Champion's affidavit provided the greatest detail in regards to this test. Champion explained that the GC/MS test generates an electronic detail that produces a corresponding graph that an analyst can read to determine the content of the substance.

(Champion aff'd at 3.) This graph produces certain peaks, and is then compared against the graphical depictions of a substance known to be cocaine and analyzed for consistencies and similarities. From this, the analyst is able to ascertain the make-up of the substance and if it contains cocaine. Champion stated that this method, referred to as a visual comparison, is a reliable and generally accepted method used to determine the make-up of a substance. (Champion aff'd at 3.) The electronic record that produces the visual output for the graph is purged after it has been peer-reviewed and the report has been prepared. Champion stated that due to limited data storage capacity of the MBSCL lab, this data is not required to be archived and the purging of the information is typical. (Champion aff'd at 3.)

Rodriguez's expert, Mr. John Steele ("Steele") has also submitted an affidavit in which he disagrees with Champions' statements and methods regarding the testing of the substances at issue. Steele contends that visual comparison method as explained by Champion is not a reliable method to identify substances. (Steele aff'd at 4.) Additionally, Steele opines that archiving data is standard procedure and he provides sample costs of storage media in an attempt to evidence that storage of the underlying data is not costly. (Steel aff'd at 3.)

The starting point in federal court for determining whether expert testimony is admissible is Rule 702 of the Federal Rules of Evidence, which provides three

factors a court is to consider: (1) if the expert's testimony is based upon adequate facts or data; (2) if the expert's testimony is a product of reliable testing methods and principles; and (3) if these reliable methods and principles have been applied to the facts of the case. Fed. R. Evid. 702 (2005). *Daubert v. Merrell Dow Pharmaceuticals* further provides that such an inquiry necessitates a preliminary assessment of whether the reasoning or methodology is scientifically valid and can be applied to the facts at issue. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592-93 (1993). *Daubert* sets forth a list of factors a court could consider in determining this preliminary query, although the list is neither exclusive nor dispositive. *See id.* at 593. This list includes a consideration of (1) whether the technique or theory can be or has been tested; (2) the known or potential error rate of; (3) whether the technique has been subject to peer review and publication; (4) the existence of standards and controls; and (5) whether the technique or theory has been generally accepted by the scientific community. *Id.* at 593-94.

In Champion's first affidavit, she addresses several of the five *Daubert* considerations. She stated that the multiple testing procedure such as the three done in this case is a common method that is recommended by the Scientific Working Group for the Analysis of Seized Drugs ("SWGDRUG").[2] Next, she stated that the analyst's reports of the substance testing are submitted for peer

---

[2]SWGDRUG is a committee comprised of 20 forensic scientists whose mission is to prescribe testing standards that meet international acceptance.

review and an administrative board prior to approval of the conclusions the testing generated. Third, she affirmed that the lab the analyst works at takes careful steps to ensure reliability and accuracy. She also stated that the techniques used in this case, specifically the GC/MS, are routinely used and widely established methods for testing controlled substances.

Based upon Champion's affidavit, the court is able to conclude, as the recommendation did, that the preliminary threshold inquiries to be considered under *Daubert* are met, and this expert testimony is scientifically valid and can be applied to the facts of this case. Next, under Rule 702 of the Federal Rules of Evidence, the court concludes that Champion has satisfied Rule 702 requirements as there are adequate facts and data supporting the method; her opinions are the products of reliable and tested procedures; and finally, these procedures have been applied to the facts of this case. *See* Fed. R. Evid. 702.

Rodriguez objected to the recommendation and contends that there are two flaws that render the methods inadmissible: (1) the analyst's judgment of the similarity of the two analog mass spectra is subjective, and (2) the analyst's failure to compare numerical data produced by the instrument with comparable data from spectra of known drugs. Additionally, Rodriguez's objection attacks the credibility of representatives from the MBSCL.

To the extent that the government's expert and Rodriguez's expert disagree with the evidence, this is a matter more appropriately addressed in an adversary system. Based upon Champion's two written affidavits, each carefully detailing the methods used and how they are reliable, this court is able to determine that this evidence has met the preliminary considerations and a *Daubert* hearing to determine this question is wholly unnecessary. When a court is to play the role of "gatekeeper" in determining the admissibility of evidence, this role "is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996).

Additionally, the court notes that the comments following Rule 702 provide guidance when considering these questions by emphasizing that "rejection of expert testimony is an exception rather than the rule." Federal Rules of Evidence 702 Advisory Committee Comments. Moreover, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595. *Daubert* and Rule 702 do not examine evidence and testimony based on the conclusions they produce, rather, the inquiry is whether the principles and methodology are reliable. *Id. Daubert,* together with Rule 702, only ask a court to determine if expert testimony meets the threshold

admissibility standards for reliability and relevance; the government has met this burden, and the court concludes that Rodriguez's challenges are solely based upon considerations to be addressed at trial.

In Rodriguez's further objections to the recommendation, he provides excerpts from testimony given by various representatives of the MBSCL from trials dating from the late 1970s through the late 1990s. Most of the testimony bears upon challenges to the witness's credibility, expertise, and training. Credibility attacks on representatives of the MBSCL have no bearing on the Rule 702 and *Daubert* considerations. Again, these are challenges to be made during a trial; challenges to these matters are outside of the purview of what is to be addressed in a *Daubert* hearing.

Finally, in Rodriguez's objection to the recommendation, he states that the denial of a *Daubert* hearing will in effect shift the burden of proof and deny him a fair trial and due process. The court disagrees with this position; allowing the government's expert and analyst's testimony to be admitted does not shift the government's burden in any way. Determinations made at a *Daubert* hearing go solely to the question of admissibility; when the court determines that evidence is admissible and finds *a Daubert* hearing unnecessary, the government must still prove its case beyond a reasonable doubt at trial. Therefore, as stated above, the

court finds the government's expert testimony and evidence satisfies Rule 702 and *Daubert* considerations, and a hearing to determine this matter is unnecessary.

## 4.   Motion to Compel Retesting

Rodriguez moved for an order compelling the retesting of the drugs relating to this prosecution and sets forth several grounds in support of this proposition. Rodriguez contends retesting is appropriate for two reasons: (1) that an order compelling retesting would be an appropriate sanction for what Rodriguez contends is destruction of evidence; and (2) Rodriguez argues that retesting is necessary for him to effectively cross-examine the government's drug identification expert.

In regards to his first ground, that retesting is an appropriate sanction, this court finds, as Magistrate Callahan did, that the government did not engage in a sanctionable activity of destroying evidence as Rodriguez contends. Rodriguez argues that the analyst conducting the GC/MS testings destroyed the numerical data that generated the graphical depictions in testing the substance. Rodriguez argues that this destruction was done in bad faith and that was the intentional destruction of the only evidence upon which the opinion of the government's analyst could be challenged.

In the government witness's affidavit, Champion states that the destruction of the data was necessary in order to accommodate the storage capacity of the lab.

(Champion aff'd at 4.) Perhaps most importantly, Champion opined that the destruction was done only after the results had been peer-reviewed and reported, and that the practice of purging the information was typical. Champion further stated that there are no MBSCL regulations requiring the analyst to store or archive the data. Rodriguez's allegation that this destruction was done in bad faith is wholly unsubstantiated as he has not implicated any act or motive that would rise to such a level.

As a second ground for retesting the substances, Rodriguez argues that retesting the substances would be the only means by which he could properly challenge the government's evidence and expert testimony. Essentially, Rodriquez would like the underlying numerical data the testing would produce and seeks to use such evidence in his defense at trial. Champion stated that retesting the substance would be time consuming and costly; a retest would require approximately 40-60 hours of an analyst's time. (Champion aff'd at 4.)

The court finds retesting to be unnecessary. As stated above in connection with the *Daubert* hearing analysis, the court finds that the initial testing of the substances has, at the very least, met the requisite reliability considerations of *Daubert*. Moreover, Rodriguez has numerous ways to challenge and cross-examine the government's expert witnesses at trial, and will be well-equipped to do so, even in the absence of retesting.

Lastly, Rodriguez filed two motions on April 25, 2005; the first seeking the production of computers programs, macros and spectral libraries; and the second seeking an order compelling an evaluation of the lab's identification methodology. These motions were filed well-beyond the August 24, 2004 filing deadline, and the court is constrained to deny the motions based on their excessive untimeliness.

Accordingly,

IT IS ORDERED that Magistrate Judge William E. Callahan, Jr.'s November 11, 2004 Recommendation and Order be and the same is hereby ADOPTED as an order of this court;

IT IS FURTHER ORDERED that Genaro Rodriguez's April 25, 2005 motion to produce computer programs [Doc. #66] and motion to compel [Doc. #67] be and the same are hereby DENIED.

Dated at Milwaukee, Wisconsin, this   23rd   day of December, 2005.

                                        BY THE COURT:

                                         s/ J. P. Stadtmueller
                                        J. P. Stadtmueller
                                        U.S. District Judge